FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Nov 14 2021

KEVIN P. WEIMER, Clerk

By: s/James Jarvis
    Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

ANTHONY SMITH aka "STIX" aka "RANDY"

**CRIMINAL COMPLAINT**

Case Number: 1:21-MJ-1078

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 12, 2021 in Cobb County, in the Northern District of Georgia, defendant(s) did, knowingly possess a firearm, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, said possession of the firearm being in and affecting interstate commerce.

in violation of Title 18, United States Code, Section(s) 922(g)(1).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

_____
Signature of Complainant
SA Tyler Wilson

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| November 12, 2021 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

AUSA Stephanie Gabay-Smith / Stephanie.smith@usdoj.gov

AFFIDAVIT

1. I, Tyler K. Wilson, being duly sworn, depose and state as follows:

2. I am an investigator and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I am an officer of the United States, who is empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 18, United States Code, Section 3051. I am currently employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2020.

3. As a result of my training and experience as an ATF SA, I am familiar with federal criminal laws and know that it is a violation of Title 18 United States Code, Section 922(g)(1) for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, to possess in and affecting commerce firearms and/or ammunition.

4. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have reviewed.  Such statements are stated in substance, unless otherwise indicated. Wherever in this affidavit I state a belief, such belief is based upon my training and experience and the information obtained through this investigation. This affidavit is intended to support probable cause but is not intended to convey all the facts of the entire investigation.

5. By this affidavit, I seek authorization for a criminal complaint and arrest warrant for **SMITH, Anthony (DOB: 12/09/1968 FBI:576836JA9)** for violations of Title, 18 U.S.C. § 922(g)(1) possession of a firearm by a convicted felon.

### Statement of Probable Cause

6. On October 13, 2021, ATF New York Field Division SA Nelson Crespo asked ATF SA McLeod and I to conduct an interview with Brandon PERRY. PERRY had purchased a firearm on September 6, 2021, in Smyrna, Georgia that New York Police Department (NYPD) recovered in the possession of a convicted felon six days later on September 12, 2021.

7. I conducted a database query of "Brandon PERRY" and located eight (8) multiple sale transactions within the Northern District of Georgia totaling seventeen (17) firearms purchased between July 2021 and October 2021.

8. On October 22, 2021, SA McLeod and I went to 3250 Dodson Drive Connector Atlanta, GA to speak with PERRY. Upon arrival, PERRY answered the door and agreed to speak with us. SA McLeod and I informed PERRY we needed to speak with him about some firearms he recently purchased, and if possible, to see those firearms. PERRY advised the firearms were in his residence and invited us inside.

9. PERRY searched multiple locations inside of his home and was only able to provide receipts for the firearms. After searching for approximately ten minutes, PERRY admitted he no longer had the firearms. SA McLeod

asked who had the firearms and PERRY responded they were given to an individual who went by "STIX."[1] PERRY stated he had been purchasing firearms for "STIX" for a few months. PERRY said he met "STIX" in June 2021 when he fell on hard times. PERRY said he needed money and "STIX" offered to pay him if PERRY would buy guns for him.

10. PERRY described "STIX" as a light skinned black male from New York in his late 30s or early 40s. PERRY stated "STIX" would typically contact him using the phone number (202) 748-4151 by text and or phone call to arrange a date for PERRY to purchase firearms. Once they agreed on a date, "STIX," normally accompanied by another individual (sometimes his sister who drove a black S.U.V. style vehicle or an unknown B/M in a green Nissan Altima), picked PERRY up near PERRY's apartment complex. SMITH would drive PERRY to either Adventure Outdoors (2500 South Cobb Drive Smyrna, GA) and/or Academy Sports (1580 Crater Lake Dr NW Kennesaw, GA), both Federal Firearms Licensee's (FFL) located in the Northern District of Georgia.

11. These were the same locations where PERRY purchased multiple firearms for SMITH over the last few months. Prior to going into the store, SMITH provided PERRY with United States currency to purchase the weapons. PERRY said SMITH would browse the firearms counter to determine which handguns he wanted to purchase. SMITH would then send PERRY a text message with a list of handguns he wanted PERRY to buy. PERRY confirmed he would purchase those same firearms on SMITH's behalf. PERRY said he completed the paperwork for the firearms and used the currency given to him by SMITH to pay for the

---

[1] Based on Affiant's investigation SMITH is STIX.

handguns. After the purchase was complete, PERRY would bring the firearms to the car and leave them with SMITH, SMITH would give PERRY a ride back to his apartment and pay him for purchasing the firearms, and SMITH would leave with the firearms purchased by PERRY.

12. PERRY advised he never asked anything about the firearms and had no idea what SMITH was doing with the guns or where the firearms would ultimately end up. PERRY advised he filled out the ATF Form 4473 when purchasing the firearms from the FFL, and that he checked the box that read, "I am the actual transferee/buyer of the firearm." PERRY also admitted to living at 3250 Dodson Connector Drive for approximately ten years despite listing 3390 Fairburn Road on his FFL paperwork.

13. SA McLeod asked how many guns PERRY estimated he purchased for SMITH and PERRY said approximately thirty handguns. SA McLeod showed PERRY a few photographs from surveillance footage obtained from PERRY's September 6, 2021, handgun purchase. PERRY identified the black male in a striped shirt, orange shorts and hat as SMITH. PERRY said the photograph depicted SMITH texting PERRY a list of guns to purchase. PERRY stated SMITH would pay him in varying amounts depending on the number of firearms that were purchased. Typically, SMITH paid around $300 but sometimes as much as $700 for each time that he purchased firearms for SMITH. SMITH would also pay a few bills for PERRY via CashApp.

14. PERRY opened his cell phone and allowed us to browse his text messages with SMITH. SA McLeod photographed the entire chain that started on July 7, 2021, at 10:14pm where SMITH identified himself as

"RANDY.[2]" The most recent text messages were from October 16, 2021, starting at 11:54am where SMITH, described in detail, the pistols and ammunition PERRY should buy. All text messages came from the (202) 748-4151 number.

15. PERRY also confirmed that all firearms he purchased from Adventure Outdoors and Academy Sports were purchased for and given to SMITH. These firearms were transferred to SMITH in the original packaging. PERRY continued to search through his apartment to provide receipts of the firearms he purchased for SMITH.

16. PERRY was able to provide the following receipts: September 6, 2021: Academy Sports, total price: $699.58 for two (2) Taurus M605 .357 Mag Revolver October 9, 2021: Academy Sports, total price: $699.58 for two (2) Taurus M605 .357 Mag Revolver October 9, 2021: Adventure Outdoors, total price: $794.97 for one (1) SCCY CPX-2, pistol one (1) SCCY CPX-2CB, pistol one (1) SCCY CPX-2CB, pistol October 16, 2021: Academy Sports, total price: $2,268.34 for one (1) SMITH Wesson SD40 pistol, one (1) SW SD40VE BLKSS pistol, one (1) Taurus G2C pistol, one (1) Ruger 5.7x28mm pistol and Winchester USA 40 SW 165 g box of ammunition.

17. While Agents were speaking with PERRY, SMITH sent a text message to PERRY asking PERRY to call him. PERRY agreed to call SMITH. During the call, SMITH asked PERRY if he would be available next week (10/25/21 through 10/29/21). PERRY confirmed he would be

---

[2] Based on your Affiants investigation STIX, RANDY and ANTHONY SMITH are one and the same person.

available that week. SMITH agreed to meet with PERRY and advised he had a "gift" for PERRY. This conversation was audio recorded.

18. Affiant went to Academy Sports to obtain copies of ATF Form 4473 and video surveillance of the transactions (if available). While at Academy, Affiant spoke with Manager Elliot Timmons, who advised that he was familiar and suspicious of the last purchase PERRY made and had already pulled the paperwork from the sale. Timmons was able to provide ATF Form(s) 4473 from Academy Sports for purchases made by PERRY as follows:
    a. August 11, 2021
        i. (1) Taurus, Model: G3, Pistol, 9mm, Serial # ACH08782
    b. September 6, 2021
        i. (1) Taurus, Model: 605, Revolver, .357 Mag, Serial # ACH098100
        ii. (1) Taurus, Model: 605, Revolver, .357 Mag, Serial # ACH 098095
    c. October 9, 2021
        i. (1) Taurus, Model: 605, Revolver, .357 Mag, Serial #ACH150610
        ii. (1) Taurus, Model: 605, Revolver, .357 Mag, Serial #ACH108905
    d. October 16, 2021
        i. (1) Ruger, Model: Ruger-57, Pistol, 5.7x28, Serial #643-34477
        ii. (1) SMITH & Wesson, Model: SD40VE, Pistol, .40 S&W, Serial #FDM3903
        iii. (1) SMITH & Wesson, Model: SD40, Pistol, .40 S&W, Serial #FDM4077
        iv. (1) Taurus, Model: G2C, Pistol, 9mm luger, Serial #1C071050

  **v.** (1) Taurus, Model: G2C, Pistol, 9mm luger, Serial #1C071025

19. Affiant contacted Adventure Outdoors to preserve any video surveillance of the last transaction by PERRY at Adventure Outdoors. Affiant spoke with manager Daniel Singleton who advised he would get copies of the video. Singleton asked if this happened to be about multiple sales by a guy named "Brandon" (PERRY). Singleton advised they were all very suspicious of the last purchase by PERRY and would also get the ATF Form(s) 4473.

20. SA McLeod was able to get copies of the video surveillance and the ATF Form(s) 4473 regarding to the purchase on October 9, 2021. I reviewed the video, which shows a light-colored car arrived and three males go into Adventure Outdoors. The males are identified as PERRY, SMITH, and BM2 (who is the driver). SMITH walked to the handgun section of adventure outdoors, looked at the handguns, and walked away appearing to type on his phone. Shortly after, PERRY approached the counter and purchased multiple firearms. While PERRY completed the paperwork, SMITH exited the store. PERRY exited the store with the purchased firearms and returned to the car, waiting outside of the car. SMITH arrived at the car a short time later, and both PERRY and SMITH waited outside of the vehicle. BM2 then arrived at the car, all involved parties entered the car, and left adventure outdoors.

21. SA McLeod also obtained all ATF Form(s) 4473 of purchases by PERRY, which showed purchases as follows:
    **a.** July 9, 2021
      **i.** (1) Taurus, Model: G2C, Pistol, 9mm, Serial #1C054998
      **ii.** (1) Taurus, Model: G2C, Pistol, 9mm, Serial #1C055440

    b. September 6, 2021
- i. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C201468
- ii. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C172991
- iii. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C172980

    c. October 9, 2021
- i. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C173117
- ii. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C178264
- iii. (1) SCCY, Model: CPX-2, Pistol, 9mm, Serial #C178363

22. After, SMITH agreed to meet with PERRY, SMITH advised he was not available to do a transaction that week (10/25/21 through 10/29/21) and would have to get up with PERRY later.

23. On or about November 9, 2021, PERRY was contacted by SMITH whom told PERRY that he was in need of a favor and needed PERRY to meet him to purchase some more firearms. PERRY said that SMITH needed PERRY to purchase the firearms because SMITH was going to make a trip and would pay him when he (SMITH) came back in town. PERRY advised ATF agents of this and agreed to meet with SMITH on Friday November 12, 2021, at Adventure Outdoors when they opened.

24. On November 12, 2021, SMITH contacted PERRY advising PERRY that he would be at Adventure Outdoors around 10:15 or 10:30. A few minutes later SMITH, sent a text message to PERRY stating "I'm pulling up in 5 mins. Get 3 Skyy 9mm. U can get me 2blk & 1 grey joint. Plus a small 380. New or used"

25. Shortly after, ATF agents observed a black truck (Ford F150 GA registration TBK8539) pull into the parking lot of Adventure Outdoors.

The truck was occupied by SMITH(front seat passenger) and Philogene Emora L Vilmar (B/M DOB 03/09/2021 GA OLN: 055185852)(driver). ATF agents observed PERRY walk towards the passenger side of the truck and have a conversation with the passenger of the vehicle (SMITH). PERRY left from the conversation with SMITH holding something in his hand appearing to be money and went into the store. SMITH and Vilmar followed behind PERRY into Adventure Outdoors. ATF agents inside Adventure Outdoors observed PERRY complete the paperwork to purchase multiple firearms and go to the front of the store to pay for the purchased firearms. PERRY went to the register to complete the purchase. However, PERRY did not have enough money to pay for the firearms. PERRY went outside and met with SMITH to obtain more money. PERRY advised ATF agents that he did not have enough money and was going to meet SMITH to get more money. PERRY obtained the money from SMITH and went back into Adventure Outdoors to complete the transaction. ATF agents then observed SMITH and Vilmar go back to the Ford F150, Vilmar got in the driver seat and SMITH in the passenger seat.

26. PERRY exited Adventure Outdoors, with a bag of the firearms that he had purchased The bag contained four (4) SCCY handguns. PERRY then took the firearms to the Ford F150 and gave them to SMITH, and then walked away from the vehicle.

27. At which point, Cobb County Police Department and ATF agents detained PERRY, SMITH, and Vilmar without incident. Upon arrest SMITH provided Officers and Agents with a fictitious North Carolina drivers license bearing the name Michael Brooks.

28. ATF agents then advised SMITH of his Miranda Warnings, in which SMITH agreed to talk with agents. Post Miranda, SMITH provided his actual name of Anthony SMITH and that he was a convicted felon who had last served seven (7) years federal time. SMITH advised that he had just come up here to hold the firearms for the gentleman that bought them. SMITH stated he was not taking the firearms anywhere. This conversation was recorded.

29. ATF agents also spoke with Vilmar, driver of the Ford F150, who said that he only knew SMITH by "STIX" and had just agreed to give SMITH a ride to meet somebody. Vilmar stated that he did not know what they were doing, but that Vilmar had no part in a transaction for firearms. Vilmar also stated that he did not give any money towards the purchase, and they were not his firearms.

30. After the transaction, PERRY provided Agents with the receipt from the purchase of the firearms. PERRY stated that initially SMITH had not given him enough money for the transaction, he was short of money. PERRY said he then went out of the store to get more money from SMITH to complete the purchase of the firearms.

31. After Vilmar and SMITH were removed from the Ford F150, ATF Agents located the purchased firearms in the back seat of the Ford F150. The firearms were:
    a. SCCY[3]  ModelCPX-1CBDE Serial number: C241308
    b. SCCY Model CPX-2CB Serial number: C178358
    c. SCCY Model CPX-1TTSG Serial number: C232031

---

[3] SCCY firearms are commonly referred to as Sky's

    d. SCCY Model CPX-1TTSG Serial number: C232030

32. ATF Agent SA Nash did a Nexus examination and stated that the above firearms were manufactured in Florida, therefore by being in possession of SMITH on November 12, 2021, the firearms had affected interstate commerce.

33. Affiant reviewed SMITH's criminal history and found he had been convicted of one or more of the following felony convictions:

    a. Attempted Sale of a Controlled Substance -3rd Degree in New York, New York on or about June 30, 1989

    b. Possession with Intent to Distribute Cocaine in Washington D.C. on or about March 3, 1990

    c. Possession of Cocaine in Washington D.C. on or about December 22, 1992

    d. Possession/Use of a Controlled Substance in the Superior Court of Hudson County, New Jersey on or about October 12, 1995

    e. Possession With Intent to Distribute Cocaine in Washington D.C. on or about January 7, 1997

    f. Theft by Deception in York, Pennsylvania on or about November 30, 2001

    g. Credit Card Manufacturing with Intent to Defraud in the Arlington Co. Circuit Court, Virginia on or about July 17, 2005

## Conclusion

34. Based on the information above, there is probable cause to believe that on or about November 12, 2021, **ANTHONY SMITH,** a person who has been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did possess in and affecting commerce a firearm, in violation of title 18, U.S.C. § 922(g)(1).